IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TINA T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.H., *Appellees*.

No. 1 CA-JV 14-0092
FILED 12-11-2014

Appeal from the Superior Court in Maricopa County
Nos. JD22619, JS17302
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Eric Devany
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

**OPINION**

Judge Michael J. Brown delivered the Opinion of the Court, in which
Presiding Judge Peter B. Swann and Judge Kenton D. Jones joined.

**B R O W N**, Judge:

¶1        Tina T. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, B.H., on the grounds of willful abuse under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2). Mother argues the court's decision is not supported by reasonable evidence. However, because she decided not to contest the allegations of the petition to terminate, our review in this case is limited to determining whether the Department of Child Safety ("DCS")[1] presented evidence demonstrating a factual basis for the allegations. For the following reasons, we conclude that the record contains such evidence, and therefore affirm.

## BACKGROUND

¶2        Mother and Nicholas H. ("Father")[2] are the biological parents of B.H., who was born in 2012. Mother's two older children, A.N. and C.B., were born in 2002 and 2007, respectively. In January 2003, police and emergency personnel responded to Mother's apartment after a 9-1-1 call reported that A.N., then three months old, was not breathing. A.N. later died from injuries consistent with "shaken baby syndrome."

¶3        When police questioned Mother about the incident, she reported that A.N. was with her then-boyfriend, Pedro, and Mother was not present because she was physically disciplining C.B. in a different room. Mother also reported that both she and Pedro often disciplined C.B. by spanking him and Pedro admitted to shaking A.N. In a later interview, Mother admitted she had seen Pedro shake A.N. previously.

¶4        Mother was charged with one count of child abuse, a class 2 felony, relating to A.N.'s death. In March 2005, Mother pled guilty to attempted child abuse, a class 3 felony. She was sentenced to one year in prison and placed on lifetime probation, the terms of which prohibited any contact with minor children. When Mother was released from prison in 2006, her probation was modified to permit supervised contact with C.B.

---

[1]        Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For ease of reference, we refer to DCS throughout this decision even though these proceedings commenced prior to the statutory change.

[2]        A motion to terminate Father's parental rights is pending in the juvenile court.

¶5        In August 2007, witnesses reported that Mother had physically abused C.B. at a store by punching him in the face and dragging him outside.  Mother was indicted on two counts of child abuse and later pled guilty to one count of child abuse, a class 6 felony.  Mother was sentenced to one year in prison along with reinstatement of the probationary condition that she have no contact with minor children.

¶6        When Mother gave birth to B.H. in August 2012, DCS removed the infant from Mother's care but did not immediately seek court intervention because B.H. had been placed in Father's care.  Mother and Father remained in contact, however, and because Father did not follow the established safety plan, DCS filed a dependency petition against both parents, and B.H. was taken into care and placed with family members.

¶7        After the court found B.H. dependent as to Mother, DCS filed its petition to terminate Mother's parental rights to B.H., alleging that Mother had "neglected and/or willfully abused a child or failed to protect a child from neglect and/or willful abuse under A.R.S. 8-533(B)(2)" and that termination was in the best interests of B.H.  At the initial hearing, Mother stated that she wished to contest the petition.

¶8        Mother appeared at the scheduled adjudication hearing, but at the outset informed the court through counsel she no longer wished to contest termination.  After discussing with Mother the rights she would be waiving, the court determined on the record that she knowingly, intelligently, and voluntarily waived her right to a contested termination hearing.  Mother then left the courtroom, but her counsel remained and participated in the hearing.  The court also excused Mother's probation officer, who was prepared to testify as a witness for DCS.

¶9        DCS presented the testimony of DCS unit supervisor Shannon Robinson, who testified that B.H. could not be reunited with Mother because the terms of her probation prevented contact with any minor child.[3] Robinson explained that Mother's history of child abuse put B.H. at a risk of abuse that could only be prevented by terminating Mother's parental rights because, despite receiving services relating to her first conviction for attempted child abuse, she subsequently abused another child, resulting in another felony conviction.  Based on these facts, Robinson opined that Mother posed a threat of harm to "[a]ny child in her care."  According to

---

[3]        On three occasions between November 2012 and August 2013, Mother unsuccessfully requested that the superior court modify the terms of her probation to permit supervised visits with B.H.

Robinson, B.H. was adoptable, thriving in her current placement with her paternal aunt and uncle, and her best interests would be served by terminating Mother's parental rights.

¶10        After admitting various exhibits offered by DCS and considering arguments from counsel, the court granted the request for termination, explaining on the record that DCS had shown by clear and convincing evidence that Mother willfully abused a child. The court found that Mother (1) knew about the serious physical abuse to A.N. and failed to protect him; (2) physically abused C.B. while Pedro was abusing A.N.; and (3) physically abused C.B. in 2007. Based on these circumstances, the court determined a nexus existed between prior abuse and the risk to B.H. because Mother failed to correct her behavior after the first child abuse incident and she has been on lifetime probation since her conviction in 2005. The court also found that DCS proved by a preponderance of the evidence that termination is in B.H.'s best interests. The court incorporated these findings in a signed minute entry and Mother timely appealed.

## DISCUSSION

¶11        Before a parent's rights may be terminated, the juvenile court holds an initial hearing, the purpose of which is to ensure service is complete and to determine whether the parent contests termination. Ariz. R.P. Juv. Ct. 65(A); A.R.S. § 8-535. If the parent wishes to contest the request for termination, the court sets the matter for a termination adjudication hearing. A.R.S. §§ 8-535(E), -537(A). The purpose of that hearing is to determine whether the party seeking termination has met the burden of proving a ground for termination by clear and convincing evidence and proving termination is in the best interests of the child by a preponderance of the evidence. Ariz. R.P. Juv. Ct. 66(A), (C). The presentation of evidence at the hearing "shall be as informal as the requirements of due process and fairness permit and shall generally proceed in a manner similar to the trial of a civil action before the court without a jury." Ariz. R.P. Juv. Ct. 66(D).

¶12        A parent, however, "may waive the right to trial on the allegations contained in the motion or petition for termination of parental rights by admitting or not contesting the allegations." Ariz. R.P. Juv. Ct. 66(D)(1). "An admission or plea of no contest may be oral or in writing." *Id.* When accepting a parent's "admission or plea of no contest[,]" the court must proceed as follows:

> (a) Determine whether the party understands the rights being
> waived;

4

(b) Determine whether the admission or plea of no contest is knowingly, intelligently and voluntarily made;

(c) *Determine whether a factual basis exists to support the termination of parental rights*; and

(d) Proceed with entering the findings and orders as set forth in subsection (F)[.]

*Id.* (emphasis added). If the party seeking termination has met its burden of proof, Rule 66(F)(2)(a) requires the court to "[m]ake specific findings of fact in support of the termination of parental rights and grant the motion or petition for termination."

¶13        Because Mother initially desired to contest the termination, the juvenile court scheduled a contested termination adjudication hearing. After Mother's counsel informed the court that Mother no longer wished to contest termination, the court informed Mother of the rights she would be waiving and then determined she knowingly, voluntarily, and intelligently waived such rights. Mother does not argue that she did not understand the rights she waived nor does she contest the validity of her waiver. Nor does Mother contend the court failed to make findings required under Rule 66(D)(1)(d) and (F)(2). Instead, Mother argues that no reasonable evidence supports the court's termination order. Specifically, she challenges (1) the court's finding that a sufficient nexus exists between the prior incidents of abuse and the risk to B.H., and (2) the court's determination that termination is in B.H.'s best interests.

¶14        As a threshold matter, Mother's arguments fail to recognize she waived her right to a contested termination hearing when she chose not to challenge the allegations of DCS's petition and thereby entered her plea of no contest. In doing so, she implicitly acknowledged that the procedures for evaluating DCS's uncontested petition would be substantially different than the procedures the court and the parties would have followed had she contested termination. Thus, Mother cannot challenge the sufficiency of the evidence as if the juvenile court had conducted a contested termination adjudication hearing. Rather, her right to appellate review is confined to raising issues contemplated by the waiver procedure outlined in Rule 66(D)(1), including the existence of a factual basis. Construing Rule 66(D)(1) to permit Mother to assert a broad attack on the sufficiency of the evidence would be contrary to her voluntary decision to enter a plea of no contest and would inject uncertainty and delay in the proceedings at a point when timely resolution of the matter is critical for the benefit of the child.

*See* Ariz. R.P. Juv. Ct. 36 ("The [termination] rules should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child.").

**¶15** Addressing Mother's challenge as an appeal from a contested termination hearing would also be unfair to the other parties to the proceeding, as well as the juvenile court, all of whom relied on Mother's knowing, voluntary, and intelligent decision to not contest the allegations of the petition. We therefore construe Mother's arguments on appeal as presenting a narrow question of whether a factual basis exists to support termination. Ariz. R.P. Juv. Ct. 66(D)(1)(c). Because our research has revealed no case law involving a challenge to a factual basis in connection with a no contest plea in a termination proceeding, we turn for guidance to the analogous context of guilty or no contest pleas made by criminal defendants, when the trial court also must determine whether a factual basis exists for each element of the crime. Ariz. R. Crim. P. 17.3; *State v. Salinas*, 181 Ariz. 104, 106, 887 P.2d 985, 987 (1994). The purpose of requiring this limited evidentiary showing is to substantiate a guilty or no contest plea and prevent conviction of an obviously innocent defendant solely on the basis of the defendant's unwillingness to contest the charges. *See State v. Johnson*, 181 Ariz. 346, 349, 890 P.2d 641, 644 (App. 1995) ("A factual basis is required for the purpose of shielding the innocent from conviction, rather than to provide a back-door for defendants to obviate finality by challenging their guilty pleas.").

**¶16** Similarly, the purpose of requiring the juvenile court to determine whether a factual basis exists to support termination under Rule 66(D)(1) is to ensure that parents do not lose their parental rights solely based on their unwillingness to contest the allegations of the petition. *Cf. In re Termination of Parental Rights of Brittany Ann H.*, 607 N.W.2d 607, 619 (Wis. 2000) ("We conclude that the legislature intended the circuit court to hear testimony in support of the allegations because testimony safeguards accurate fact-finding and protects the parents."). Thus, simply because parents decide not to contest a request for termination does not mean their rights are automatically severed. Instead, the juvenile court must comply with Rule 66(D)(1), which includes determining whether the party seeking termination has presented evidence establishing the existence of a factual basis to support the alleged grounds for termination. On appeal, our task is to discern whether the juvenile court record includes evidence that, if believed, would establish the statutory grounds for termination of Mother's parental rights.

**¶17**        DCS sought to terminate Mother's parental rights under A.R.S. § 8-533(B)(2), which provides for termination when a parent has neglected or willfully abused a child. Abuse includes "serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." *Id.* DCS alleged that Mother's prior abuse of A.N. and C.B. supported termination of her parental rights to B.H, who was born after those incidents of abuse. Under § 8-533(B)(2), "parents who abuse or neglect their children, or who permit another person to abuse or neglect their children, can have their parental rights to their other children terminated even though there is no evidence that the other children were abused or neglected." *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 79, ¶ 14, 117 P.3d 795, 798 (App. 2005). When the grounds for termination of a parent's rights to one child are based on abuse of another child, DCS must show a constitutional nexus between the prior abuse and the risk of future abuse to the child at issue. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 16, 257 P. 3d 1162, 1165 (App. 2011).

**¶18**        The juvenile court found that DCS met its burden of proving that Mother had willfully abused her children and there was a constitutional nexus between the prior abuse and B.H. such that abuse would likely occur again. DCS supervisor Robinson opined that because Mother had abused (or was aware of the abuse of) her two older children, she posed a threat of harm to any children in her care. This testimony, together with the exhibits describing Mother's involvement in the prior incidents of abuse and the conditions of her probation, supports a finding that DCS satisfied its obligation under Rule 66(D)(1) to establish a factual basis supporting the statutory ground for termination.[4] *See Mario G.*, 227 Ariz. at 285, ¶ 16, 257 P. 3d at 1165 (affirming the juvenile court's finding that termination was appropriate because although child was born three years after the incidents involving the prior abuse, a sufficient nexus existed between the prior abuse and the risk that such abuse would occur to the child).

**¶19**        Given Robinson's testimony that B.H. was thriving in her current placement, the record also supports the juvenile court's finding that termination was in the child's best interests. *See Audra T. v. Ariz. Dep't of*

---

[4]        The juvenile court did not specifically state that it had determined a "factual basis" existed in support of DCS's petition for termination. But that finding is implicit in the court's statements made on the record and in its minute entry, where the court outlined the evidence presented and found that DCS satisfied its burden of proof.

*Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (stating that juvenile court, in determining best interests, may properly consider "whether an existing placement is meeting the needs of the child"); *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App. 1998) (stating that the juvenile court must find that the "child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship"). Therefore, the record plainly indicates that DCS established a factual basis showing termination of Mother's parental rights was in B.H.'s best interests.

## CONCLUSION

¶20　　　We affirm the juvenile court's order terminating Mother's parental rights to her daughter, B.H.



Ruth A. Willingham · Clerk of the Court
FILED: ama