NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RONDA J., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.M., K.J., A.M., *Appellees*.

No. 1 CA-JV 15-0253
FILED 12-22-2015

Appeal from the Superior Court in Maricopa County
No. JD 38003
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, P.L.L.C., Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

D O W N I E, Judge:

¶1        Ronda J. ("Mother") appeals from an order terminating her parental rights.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Mother was convicted of child abuse involving her eldest son, K.J., in 2006.[1]   Mother violated her terms of probation and was sentenced to a one-year prison term; the child abuse conviction was designated a felony.

¶3        On October 16, 2013, the Department of Child Safety ("DCS") received a report that Mother's newborn daughter had been hospitalized due to non-accidental injuries.[2]  (K.J. later admitted causing the injuries.)  The same day, Mother assaulted her 68-year-old mother, whom she held down, hit, and choked.  DCS took custody of the children. Mother subsequently pled guilty to vulnerable adult abuse, a class four felony and domestic violence offense.  She was sentenced in March 2014 to 2.5 years in prison.

¶4        At a March 26, 2014 juvenile court hearing, Mother asked the court to order that the children visit her in prison.  The court directed DCS to consult with the youngest child's doctor about such visits, and DCS also agreed to consult a psychologist regarding a different child's visits.  The minute entry from that hearing states, in pertinent part:

> IT IS ORDERED allowing the mother to have visitation with
> the children at the Arizona Department of Corrections if the

---

[1]      Mother has four children, three of whom remain in DCS care.  K.J. was dismissed as a party when he turned 18 in 2014.

[2]      The Arizona Department of Economic Security originated this action but was later replaced by the Department of Child Safety. *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).

children can be safely transported and if [A.M.]'s pediatrician indicates that is alright for her to visit as well. The Department shall make arrangements for the children to be transported to the visits.

¶5        At a hearing on August 26, 2014, the court changed the case plan to severance and adoption. Counsel for Mother advised the court that visits with the children had not yet occurred. The children's guardian *ad litem* objected to any prison visits, but the court ordered DCS to "have a psychological consult regarding whether the children would be harmed visiting the mother in prison."

¶6        DCS subsequently moved to terminate Mother's parental rights, and a severance trial occurred in May 2015. Mother remained incarcerated at the time of the trial.

¶7        The court issued a ruling terminating Mother's parental rights on the ground of willful abuse of a child under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2).[3] Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 108(B).

## DISCUSSION

¶8        Mother argues the severance order must be reversed because: (1) DCS did not make reasonable efforts at reunification; and (2) an insufficient nexus exists between her child abuse conviction and the risk of future abuse. We will affirm an order terminating parental rights unless the juvenile court's findings are clearly erroneous, meaning the record lacks any reasonable evidence to support them. *See Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9 (App. 2001).

### I.        Reunification Efforts

¶9        The only specific contention Mother raises about reunification services is that DCS "could have done a more diligent effort in providing visitation with the children to see how Mother interacted with [them]." For purposes of our analysis, we assume, without deciding,

---

[3]        DCS also alleged the length of Mother's prison sentence as a basis for termination under A.R.S. § 8-533(B)(4), but the court concluded DCS failed to prove that ground.

that DCS must make reasonable efforts at reunification where, as here, termination is grounded on willful abuse of another child.

¶10      Mother received three prison visits with the children, though the first visit did not occur until April 2015. The record reflects that DCS pursued visitation earlier, submitting requests for monthly supervised prison visits in June 2014. DCS explained that some of the delay stemmed from prison-imposed limitations, communication difficulties with corrections officials, and a lack of providers or family members willing to transport and supervise the children.

¶11      Moreover, even assuming DCS should have more diligently pursued visitation, Mother has not demonstrated that additional visits would have addressed the problems that led to termination of her parental rights — specifically, her issues with anger and violence. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999) (DCS is only obligated to undertake measures with a reasonable possibility of rehabilitating a parent.). In its severance ruling, the juvenile court stated:

> Despite Mother's conviction for [abusing K.J.], the time she spent on probation for same, and the fact that she is presently serving a prison term for violating her probation pertaining to this abuse, Mother demonstrated no remorse and a complete lack of understanding of the wrongfulness of her abuse. At trial, Mother blamed [K.J.]'s facial injuries to his "squirming." Mother's [sic] through her words and demeanor at trial, failed to convince this Court that she had any remorse for abusing [K.J.] or that she believed, even to the slightest degree, that her behavior was inappropriate. Add to this act of violence, Mother's additional act of violence against a vulnerable adult on October 16, 2013, and a clear picture is presented of an individual with an anger problem and a propensity towards violence.

¶12      Mother argues visitation "would have been beneficial in assessing [her] ability to parent and her temperament." But a reasonable trier of fact could conclude that the highly controlled environment of a prison would not be a reliable predictor of whether Mother's long-standing anger and violence issues would place the children at risk if they were in her care in a non-custodial setting.

¶13        Contrary to Mother's suggestion, the juvenile court implicitly made a reasonable efforts finding. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004) (If court fails to expressly make a necessary finding, we may determine whether the record supports an implicit finding.).   The court noted that it was required to "find that DCS made reasonable efforts to reunify the family, or that such efforts would have been futile."   It also observed that "DCS must prove the statutory ground, [including] the reasonable efforts aspect by clear and convincing evidence."   The court concluded DCS had proven "each required element of A.R.S. § 8-533(B)(2) by clear and convincing evidence." *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 14 (App. 2014) ("juvenile court will be deemed to have made every finding necessary to support the judgment").

## II.        Grounds for Termination

¶14        When a severance order is based on abuse of another child, "DCS must show a constitutional nexus between the prior abuse and the risk of future abuse to the child at issue." *Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 299, ¶ 17 (App. 2014).   Mother argues there was an insufficient nexus between her child abuse conviction and the termination of her parental rights.   She further argues the "subsequent conviction for vulnerable adult abuse is not a sufficient nexus to show that Mother will be a threat to any child in the future."   We disagree.

¶15        Considered together and in context, Mother's felony conviction for child abuse, her more recent felony conviction for vulnerable adult abuse, and her dismissive attitude toward both matters provided the necessary nexus. *See Tina T.*, 236 Ariz. at 299–300, ¶¶ 17–18 (if the facts demonstrate "abuse would likely occur again," termination based on prior abuse of another child is proper).   In its ruling, the juvenile court explained the ongoing risk of abuse:

> The fact that Mother acted in a violent manner against a vulnerable adult despite her prior conviction for abusing a vulnerable child demonstrates that any child, or person, with whom Mother has contact is at great risk of harm and physical abuse the next time Mother gets upset with that child or person.  Had Mother not committed another violent offense and demonstrated an understanding of the wrongfulness of her violent past, the Court may have reached a different conclusion.  Sadly for Mother, this is not the set of facts before the Court at this time.

¶16        The court also found that Mother expressed "no remorse" for assaulting her mother and noted her "significant" history with DCS. The court described the severity of K.J.'s abuse quite differently from Mother's more benign portrayal, stating:

> Mother's neighbors reported they heard a child being beaten inside Mother's home, as they heard the child's screams. Mother admitted to law enforcement that she was "disciplining" [K.J.], then age 10.  Mother further reported to "whipping his ass" the week prior as well.  [K.J.] was observed with a large bruise and bump on his left eye and multiple new and old bruises and welts on his upper legs, lower back, and buttocks.

¶17        The facts that the juvenile court cited and relied upon were relevant to an assessment of future risk.  The termination order is supported by both reasonable evidence and an appropriate constitutional nexus.

## CONCLUSION

¶18 We affirm the order terminating Mother's parental rights.



**Ruth A. Willingham** · **Clerk of the Court**
**FILED**: ama

RONDA J. v. DCS, et al.
Decision of the Court

7