NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JOSEPH W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.W., *Appellees.*

No. 1 CA-JV 16-0043
FILED 8-30-2016

---

Appeal from the Superior Court in Mohave County
No. L8015JD201407012
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellees*

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Lawrence F. Winthrop joined.

H O W E, Judge:

¶1        Joseph W. ("Father") appeals the juvenile court's order terminating his parental rights to his minor child, C.W., on three grounds, including substance abuse under A.R.S. § 8–533(B)(3). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In April 2014, the Department of Child Safety[1] ("Department") received a report that Father had physically abused then three-year-old C.W., causing his lip to bleed. When a Department investigator spoke with Father, Father admitted that he used methamphetamine. The investigator also noted that Father had inadequate, dirty housing and learned that before this incident, C.W. lived in filthy motel rooms and moved between the care of his parents and maternal grandmother. As a result, the Department removed C.W. and placed him with his maternal grandmother. The Department then petitioned for dependency, alleging that Father neglected C.W. by committing domestic violence, using illegal substances, and failing to provide C.W. with the basic necessities of life.

¶3        Over the next month, the Department provided Father with substance abuse treatment, random drug testing, mental health services, parenting classes, and supervised visitations. Father, however, failed to attend his mental health services and parenting classes. Although the Department had scheduled numerous supervised visits during that time, Father attended only two. Father also missed ten required drug tests. Of the five drug tests Father completed in that month, three were positive for methamphetamine. Then in May 2014, Father, who was on probation for drug offenses committed before the Department petitioned for

_____

[1]        The Department of Child Safety is substituted for the Arizona Department of Economic Security. *See* S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted); Ariz. R. Civ. App. P. 27.

dependency, was arrested for violating that probation by testing positive for methamphetamine and had his probation revoked. Because of his arrest and incarceration, Father did not complete any of the reunification services that the Department provided.

¶4        The week following Father's arrest, the juvenile court conducted a dependency hearing on the Department's petition. Father denied the allegations in the petition, but entered a no contest plea and submitted the dependency to the court. The court adjudicated C.W. dependent as to Father and ordered family reunification concurrent with severance and adoption as the case plan. After the hearing, in June 2014, Father was sentenced to three years' imprisonment for the previous drug offenses.

¶5        In September 2015, while Father remained incarcerated, the Department moved to terminate Father's parental rights to C.W. The Department alleged that Father neglected C.W. and was unable to discharge his parental responsibilities due to substance abuse and that Father's incarceration length was such that it would deprive C.W. of a normal home for a period of years. At the contested severance hearing, the Department introduced a February 2014 pre-sentence investigation report from Father's criminal case, in which Father reported that he had abused methamphetamine since the age of 16. According to the report, Father stated that he then was using the drug three or four times each week and had abused other drugs in the past, including marijuana, cocaine, LSD, and heroin.

¶6        The case manager testified that Father remained unable to properly parent C.W. due to his substance abuse and his inability to provide adequate housing while incarcerated. The case manager testified that she believed Father's substance abuse would continue for a prolonged period of time because he tested positive for methamphetamine before being incarcerated and was incarcerated for a drug related offense. She further believed Father's substance abuse would continue because, before he was incarcerated, he failed to comply with his random drug tests and did not complete any substance abuse treatment.

¶7        Regarding C.W.'s best interests, the case manager testified that C.W. was placed with his maternal grandmother. The case manager stated that this was the least restrictive placement and that the placement was meeting C.W.'s needs. She further stated that C.W. was adoptable and that his maternal grandmother was willing to adopt him. The case manager testified that termination of Father's parental rights was in C.W.'s best

interests because C.W. needed a permanent, good, and stable home, but Father could not meet those needs. Additionally, the case manager testified that if Father's parental rights were not terminated, he would still need to successfully complete reunification services upon his release before the Department could return C.W. to him. The case manager stated that this would harm C.W. because C.W. would not have a permanent home in the meantime.

¶8 During his testimony, Father stated that he had completed drug counseling while incarcerated. But Father admitted that while in prison, he could not parent C.W., which included "taking care of[,] feeding[,] playing with[, and] clothing" him. The juvenile court terminated Father's parental rights to C.W., finding that the Department proved all three grounds alleged in its motion by clear and convincing evidence. Specifically, the juvenile court found that although the time between C.W.'s removal and Father's incarceration was brief, Father was unable to control his drug addiction even for that time. The court also noted that Father should have known that he might be incarcerated if he violated his probation for the drug offenses, but "that wasn't enough to get him to stop using drugs, stay out of custody and be in a position where he could work on a case plan and be a father."

¶9 The court also found that termination was in C.W.'s best interests because his placement was meeting his needs and C.W. was excelling there. The court specifically stated that waiting for Father's release from custody to see if he could properly parent C.W. and remain drug free was too speculative to be in C.W.'s best interests. Father untimely appealed, but the juvenile court granted his motion to allow the appeal.

## DISCUSSION

¶10 Father argues that insufficient evidence supports the juvenile court's order terminating his parental rights on any of the three grounds. We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9, 344 P.3d 842, 844 (App. 2015). We accept the juvenile court's factual findings unless no reasonable evidence supports them and will affirm a severance order unless it is clearly erroneous. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 508 ¶ 1, 200 P.3d 1003, 1005 (App. 2008). Additionally, we will affirm the juvenile court's termination order if any one statutory ground is proved and if the termination is in the child's best interests. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376 ¶ 14, 231 P.3d 377, 380 (App. 2010). Because sufficient evidence supports the juvenile court's order terminating Father's parental

rights for substance abuse and its finding that termination was in C.W.'s best interests, the juvenile court did not err.

## 1. Statutory Ground for Termination

**¶11** As relevant to our disposition of this appeal, Father argues that insufficient evidence supports the juvenile court's order terminating his parental rights to C.W. for chronic substance abuse. Although a parent's right to care, custody, and control of his child is fundamental, it is not absolute. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78 ¶ 6, 117 P.3d 795, 797 (App. 2005). The juvenile court may terminate a parent's fundamental right to a child if clear and convincing evidence shows the existence of at least one statutorily enumerated ground in A.R.S. § 8–533. A.R.S. § 8–533; Ariz. R.P. Juv. Ct. 66(C).

**¶12** As relevant here, the juvenile court may terminate parental rights if (1) the parent has a history of chronic substance abuse; (2) the parent is unable to discharge his parental responsibilities because of his chronic substance abuse; and (3) reasonable grounds exist to believe that the abuse will continue for a prolonged and indeterminate period. A.R.S. § 8–533(B)(3); *Raymond F.*, 224 Ariz. at 377 ¶ 15, 231 P.3d at 381. The juvenile court must also consider the "availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8–533(D).

**¶13** The juvenile court did not err in terminating Father's parental rights because sufficient evidence supports the elements of the substance abuse ground. First, the record shows that Father has a history of chronic substance abuse. Father began abusing methamphetamine when he was 16 years old and used the drug up to four times per week at least until February 2014. Even after the Department removed C.W. in April 2014, Father continued to abuse methamphetamine. In the span of just one month between C.W.'s removal and Father's subsequent May 2014 arrest, Father missed ten required drug tests. Of the five he completed, three were positive for methamphetamine. Father also failed to attend his substance abuse treatment in that month. This shows, as the juvenile court found, that Father was unable to control his addiction even briefly. In addition to methamphetamine, Father admitted to using other serious drugs in the past.

**¶14** Second, sufficient evidence supports the finding that Father could not discharge his parental responsibilities because of his substance abuse. Parental responsibilities include, among other things, providing a

child with food, shelter, education, and ordinary medical care. *Matter of Appeal in Maricopa Cty. Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 185, 692 P.2d 1027, 1034 (App. 1984). The record shows that Father could not discharge his parental responsibilities due to his substance abuse even before he was incarcerated. On one occasion, Father was under the influence of methamphetamine while caring for C.W. and physically abused the child, giving him a bloody lip. The Department investigator noted that at that time, Father had provided inadequate and dirty housing for C.W. In addition to inadequate housing, Father did not provide C.W. with stable housing because of his drug use. C.W. constantly moved between different homes and filthy motel rooms with Father and was shuffled between the care of Father and the maternal grandmother. Father's incarceration for violating his probation further shows that Father had little consideration for C.W.'s health and safety, as he admitted that he could not parent C.W. or provide him with care, food, or clothing while incarcerated.

¶15　　　　Finally, reasonable grounds exist to believe that Father's substance abuse will continue for a prolonged and indeterminate period. Although Father stated that he had completed drug counseling while incarcerated, the record shows that when out of prison, Father cannot maintain his sobriety. As the juvenile court found, even though Father knew he would be incarcerated and possibly lose his child if he used methamphetamine and violated his probation, this was not enough to keep him from using the drug. *See Raymond F.*, 224 Ariz. at 379 ¶ 29, 231 P.3d at 383 ("Father's failure to remedy his drug abuse, despite knowing the loss of his children was imminent, is evidence that he has not overcome his dependence on drugs."). Even with the assistance of the services that the Department provided, Father continued to test positive for methamphetamine. He failed to attend his substance abuse treatment class and failed to report for several required drug tests. Because Father could not maintain sobriety for even that brief time, reasonable grounds exist to believe his addiction will continue for a prolonged period.

¶16　　　　The record further shows that the Department made diligent efforts to provide Father with reunification services but Father failed to make the necessary sobriety changes to permit reunification. The Department provided Father with referrals for drug testing, substance abuse treatment, parenting classes, mental health services, and supervised visitations. But Father only sporadically appeared for scheduled drug testing and failed to appear for any other service during the dependency. Because Father was then incarcerated for violating his probation for drug offenses by using methamphetamine, his referrals to these services expired. Accordingly, sufficient evidence supports the juvenile court's order

terminating Father's parental rights to C.W. on the ground of chronic substance abuse and we need not address the other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3, 53 P.3d 203, 205 (App. 2002).

### 2. Child's Best Interests

**¶17** Father next argues that insufficient evidence supports the juvenile court's finding that termination of his parental rights was in C.W.'s best interests. Finding one of the statutorily enumerated grounds by clear and convincing evidence does not suffice to terminate a parent's rights. A.R.S. § 8–533(B). Instead, the juvenile court must also find by a preponderance of the evidence that termination would be in the child's best interests. *Id.*; *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41, 110 P.3d 1013, 1022 (2005). Termination is in the child's best interests if the Department proves that the child would either benefit from the termination or be harmed by the continuation of the parent-child relationship. *Shawnee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179 ¶ 20, 319 P.3d 236, 241 (App. 2014). Relevant factors in determining whether a child would benefit from the termination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *See Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 300 ¶ 19, 339 P.3d 1040, 1045 (App. 2014); *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288 ¶ 26, 257 P.3d 1162, 1168 (App. 2011).

**¶18** Sufficient evidence supports the juvenile court's finding that terminating Father's parental rights was in C.W.'s best interests. C.W. had been in his maternal grandmother's care for over a year at the time of the severance hearing. Even though Father wants to have contact with C.W., severance is in C.W.'s best interests because it provides the child with permanency and consistency. The record shows that C.W. was adoptable and excelling in his placement, which was meeting C.W.'s needs. C.W.'s maternal grandmother also was willing to adopt him. Finally, the case manager testified that if Father's rights were not terminated, Father would still need to successfully complete his reunification services once released from prison before the Department would return C.W. to him. C.W. would consequently not have a permanent home for a longer, indeterminate period of time. Accordingly, the juvenile court did not err in finding that terminating Father's parental rights was in C.W.'s best interests.

## CONCLUSION

¶19  For the foregoing reasons, we affirm.



Amy M. Wood • Clerk of the court
FILED: AA