IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

A.R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, JESSICA S., *Appellees*.

No. 1 CA-JV 18-0273
FILED 4-2-2019

Appeal from the Superior Court in Maricopa County
Nos. JD28985/JS18836
The Honorable Sara J. Agne, Judge

**SPECIAL ACTION JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellee Jessica S.*

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which
Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**C R U Z**, Judge:

¶1        The guardian *ad litem* ("GAL"), on behalf of the minor A.R., requests reversal of the juvenile court's finding that severance of the parental rights of Jessica S. ("Mother") was not in A.R.'s best interests.  For the following reasons, we accept special action jurisdiction *sua sponte* and deny relief.  We affirm the juvenile court's findings and the order denying DCS' petition to sever Mother's parental rights.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of A.U., a child victim of severe physical abuse.  Julio Ramirez ("Father")[1] is not A.U.'s biological parent, but he and Mother are the biological parents of two other children, both with initials A.R. (hereinafter "middle child" and "A.R."), born after A.U.  As a result of the abuse perpetrated on A.U. while in the care of Mother and Father, Mother's parental rights to A.U. were severed.  In that separate case neither parent was conclusively identified as the abuser.  Still, the fact that the injuries occurred while A.U. was in the care of Mother or Father, or both, and due to their severity—including complex skull fractures to both sides of his head, brain bleeding consistent with head trauma, healing fractures to his left leg and hand, bruising to his face, bruising to his abdomen and back, and peeling on his feet associated with second-degree burns, most of which occurred over time—the juvenile court found that Mother and Father each either abused A.U. or knew it was occurring.  Additionally, the two parents had their parental rights to the middle child terminated when DCS established that there was a sufficient nexus between A.U.'s abuse and the risk of abuse to the middle child.  A.R.—Mother and Father's second, and younger, biological child—is the subject of this severance proceeding.

¶3        Four days after A.R.'s birth, DCS filed a dependency petition under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2), alleging Mother and Father had willfully abused A.U. and that there was a sufficient nexus between A.U.'s abuse and risk of abuse to the newly-born A.R.  DCS further alleged, pursuant to A.R.S. § 8-533(B)(10), that the prior termination of parental rights to A.U. was an additional ground for termination of Mother's and Father's rights to A.R.  Six months later, DCS filed its petition for severance.  DCS eventually placed A.R. with the paternal grandmother,

---

[1]      Although Father's parental rights to A.R. were severed, he is not a party to this appeal.

Mildred Ruano ("Ruano"), a potential adoptive placement. By the time of the final hearing, A.R. had been in placement with Ruano for eight months.

¶4 After the final hearing, the juvenile court found A.R. was dependent as to Mother, and that abuse pursuant to A.R.S. § 8-533(B)(2) was conclusively established as a ground for severance against Mother, but that DCS failed to establish, under A.R.S. § 8-533(B)(10), that the underlying cause that prevented Mother from being able to meet A.U.'s needs continued to exist and prevented Mother from meeting the needs of A.R. Lastly, the court ruled that, although Ruano seemed a loving placement for A.R., given the likelihood Ruano would allow frequent unsupervised contacts between Father and A.R., "the preponderance of the evidence [did] not favor termination of Mother's parent-child relationship as a benefit to [A.R.]."

¶5 In the end, the court severed Father's parental rights to A.R., but not Mother's. The GAL timely appealed the ruling denying severance of Mother's rights. It is unclear whether a GAL, alone, has standing to seek appellate review of the juvenile court's order. Further, the ruling is not a final order because Mother's dependency case is still ongoing in the juvenile court. DCS' argument assumes that the court's order was a final and appealable order. *See* A.R.S. § 8-235(A); Ariz. R.P. Juv. Ct. 103(A). Even if jurisdiction by appeal is lacking, this court has the "discretion to consider the matter as a special action." *State v. Perez*, 172 Ariz. 290, 292 (App. 1992); *see also Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001) (*sua sponte* accepting special action jurisdiction). Accordingly, the court in its discretion will entertain the GAL's challenge, on behalf of the minor, to the June 2018 ruling by accepting special action jurisdiction *sua sponte*, because clarifying the appropriateness of considering a parent's efforts and progress in the context of the best-interests analysis is an issue of statewide importance. *See* A.R.S. § 12-120.21(A)(4); Ariz. R.P. Spec. Act. 1(a).

## DISCUSSION

I.    Standard of Review

¶6 "We accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citation omitted). It is not proper for this court to weigh the evidence. *Id.* Resolving conflicting evidence, even "sharply disputed" evidence, is "uniquely the province of the juvenile court." *Id.* (citation omitted). This court "will affirm unless, as a matter of law, no reasonable

fact-finder could have found that the evidence satisfied the applicable burden of proof." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 12 (App. 2011).

II.     Best Interests Determination

¶7      The GAL argues the court subordinated A.R.'s interests to Mother's when it found A.R.'s best interests did not support severance. The GAL argues that because DCS had previously established a statutory ground for severance, the court improperly considered Mother's diligent efforts toward reunification, and Mother's fitness to parent. The GAL also argues that the court's concerns over any plan for adoption by Ruano, or the child's adoptability, should not have resulted in declining to find that it was in A.R.'s best interests that Mother's rights be severed. Any concern in that regard, according to the GAL, should have been addressed by considering an alternative placement. Additionally, the GAL argued Mother's continued status as a parent is a detriment to A.R.

¶8      In *Alma S.* the Arizona Supreme Court interpreted A.R.S. § 8-533(B) "as entailing a two-step inquiry." 245 Ariz. at 149, ¶ 8. The first step requires the juvenile court to find a statutory ground for termination by clear and convincing evidence; and the second, to determine, by a preponderance of the evidence, whether severance is in the child's best interests. *Id.* Here, the parties do not contest that the first step of the *Alma S.* inquiry is established. The second step is the best-interests determination. It is the State's burden to prove by a preponderance of the evidence that severance will benefit the child or that denying severance will harm the child. *Id.* at 150, ¶ 13. Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept the juvenile court's findings of fact if supported by reasonable evidence and inferences and will affirm a severance—or denial of severance—order unless it is clearly erroneous. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

¶9      In making the best-interests determination regarding A.R., the juvenile court recognized that, generally speaking, evidence to support a statutory ground for severance usually establishes circumstances that are detrimental to the child. And yet, the fact of a proven statutory ground does not create the presumption that severance would be in the best interests of the child. We have held that "where a juvenile court determines that despite the presence of statutory ground it is not in the best interests of the child to terminate, [the court] may deny termination." *In re Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988).

¶10 Next, the juvenile court implicitly found A.R. was adoptable when it acknowledged that the immediate availability of an adoptive placement generally weighs in favor of severance; in so finding, however, the court expressed concerns about the child's safety in the current placement, and whether Ruano would be an appropriate adoptive placement. In this regard, the court highlighted testimony regarding the events surrounding A.R.'s first birthday. The court found Mother credible when she testified that on the child's birthday, Ruano left A.R. alone with Father and an unapproved person—a significant violation of the DCS safety plan. Similarly, the court stated it did not find credible Ruano's accounts of the birthday events. Additionally, Mother testified that Ruano and the case worker were emotionally invested in the case and seemingly more interested in seeing Mother's rights to A.R. severed than in assisting Mother achieve reunification. In that regard, Mother also testified that, on one occasion, during Mother's supervised parenting time at Ruano's home, the case worker and Ruano were in the kitchen whispering and crying together; and that Ruano said, "I just want this all to be over with."

¶11 Likewise, the court did not find credible Ruano's testimony to an ongoing relationship between her son (Father) and Mother. Ruano's testimony in that regard was relevant to whether Mother acknowledged the risk of abuse Father may pose to A.R. if Mother retained her parental rights. Instead, the court found Mother credible when she testified that, although at the time of A.U.'s injuries and severance proceedings she did not believe Father could have caused A.U.'s injuries, some three years later, Mother started believing Father could have intentionally caused A.U.'s injuries. Though equivocal during the previous severance proceedings regarding A.U., Mother maintained this position throughout the proceedings relating to A.R. and the court believed her.

¶12 Based on these credibility determinations by the court, we conclude the court implicitly found that Mother's continued involvement in A.R.'s life for now protected the child from the possibility of being left unattended with Father. We presume, when reasonable evidence exists on the record, that the court made every finding necessary to support its order. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004). The credibility determinations of the court, along with the evidence on the record, reasonably support a finding that Mother did not currently present a detriment to the child sufficient to require her parental rights be severed. Accordingly, we cannot say the court erred by finding DCS failed to prove severance was in A.R.'s best interests.

¶13          The GAL also argues that the court's consideration of Mother's progress and ability to parent, in any degree, was improper. Specifically, the GAL argues the court did not follow *Alma S.* and "conflated the fitness inquiry with the best-interests inquiry." We disagree. *Alma S.* does not require the court, when determining a child's best interests, to ignore all consideration of Mother's efforts toward reunification, the bond between parent and child, or fitness to parent. 245 Ariz. at 151, ¶ 15. "[While] the focus of the best-interests inquiry is on the child, courts should consider a parent's rehabilitation efforts as part of the best-interests analysis." *Id.* The Arizona Supreme Court has given the juvenile courts clear direction to consider the "totality of the circumstances," while ensuring they are not subordinating the interests of the child to that of the parents. *Id.* at 150-51, ¶¶ 13, 15. As long as A.R.'s interests remained paramount to Mother's, it was within the court's discretion to consider all factors under a totality of the circumstances test, including evidence of Mother's reunification efforts, issues surrounding adoptability, Mother's fitness to parent, and the bond between Mother and A.R. *Id.* at 151, ¶ 15. That is exactly what the juvenile court did here.

¶14          In fact, the court expressed concern over the risk that Father might harm A.R. if the child remained in the care of Ruano, and that this exposure would not be in A.R.'s best interests "[e]specially where [A.R.] has a Mother who . . . has been consistent in her diligent efforts to work toward reunification." Read in conjunction, the court's findings show a child-centric assessment concluding that it would be detrimental to A.R. to lose the benefit of a relationship with Mother who is bonded to the child and is conscientiously and diligently working to reunify with the child.

¶15          The court's finding that severance of Mother's parental rights is not in A.R.'s best interests is further supported by testimony that, under circumstances where A.R. could potentially be left in the care of an abuser (Father), the child has the benefit of a parent who participated in all of her services throughout the case "without fail"; a parent who was making "behavioral changes that are necessary in order to work towards reunification"; and a parent who no longer wanted Father around the child while unsupervised. As such, viewed in the light most favorable to upholding the juvenile court's best-interests finding, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016), and applying our deferential standard of review, we conclude that the court did not err in finding DCS failed to show, by a preponderance of the evidence, that severance of Mother's parental rights at this time is in A.R.'s best interests.

¶16 Finally, the GAL argues the court's ruling is contrary to substantial evidence. However, the record supports the juvenile court's factual findings and conclusions. "We will only reverse the juvenile court's decision if there is no reasonable evidence to support its findings." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13 (App. 2010). Therefore, we decline the GAL's invitation to reweigh the evidence presented before it.

## CONCLUSION

¶17 We accept special action jurisdiction *sua sponte* and deny relief. We affirm the juvenile court's findings and the order denying DCS' petition to sever Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA