NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JESSICA S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.R., *Appellees*.

No. 1 CA-JV 20-0171
FILED 3-18-2021

Appeal from the Superior Court in Maricopa County
No. JD 28985
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Office, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee, DCS*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1 Jessica S. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, Ally.[1] Mother argues that the court erred by finding that (1) Ally was in danger of abuse or neglect, and (2) termination was in the child's best interests. Because the juvenile court's decision is supported by the record, we affirm.

## BACKGROUND

¶2 Mother and Julio R. ("Father") are the biological parents of Ally, born in January 2017.[2] Shortly after Ally's birth, the Department of Child Safety ("DCS") removed her from her parents' care. Because Mother and Father's parental rights to two other children, Andrew and Sara, had previously been terminated based on abuse and neglect grounds, DCS believed Ally would be in danger of abuse or neglect if left in her parents' custody. Ally was eventually placed with her paternal grandmother ("Grandmother").

¶3 In the prior dependency, DCS became involved after Mother had taken Andrew to the hospital following an alleged fall. Hospital staff discovered Andrew had several injuries, including skull fractures, burned feet, a broken leg, and a broken hand. Medical professionals determined that the parents' explanations of the injuries were inconsistent with the injuries observed during the examination. Mother also made statements minimizing the severity of the burns and suggesting Andrew's bruises could have been the result of learning to walk or roughhousing with the family dog. Ultimately, the juvenile court terminated Mother and Father's parental rights to both children. In the termination order, the court noted that Mother's account of events leading up to the injuries had been inconsistent, and that it did not believe her various accounts of how the

---

[1] We use pseudonyms throughout for all children's names to protect their identities and privacy.
[2] Father is not a party to this appeal.

injuries occurred. Ultimately, the court found by clear and convincing evidence that Mother had either abused Andrew or knew Andrew was being abused, and that Andrew was a victim of Mother's neglect. Mother later admitted that Father may have caused Andrew's injuries.

¶4 In January 2017, shortly after Ally was taken into care, DCS filed a dependency petition alleging Mother and Father were unfit to parent based on their prior abuse and neglect of Andrew and Sara. After a joint dependency and termination trial, the court adjudicated Ally dependent, as to both parents, and found that DCS had proven the abuse grounds for termination as to Father. The court also found that termination of Father's parental rights was in Ally's best interests, and his rights were severed. At that time, the court did not find termination of Mother's parental rights was in Ally's best interests and set a case plan for family reunification.[3]

¶5 In December 2018, the court granted Mother unsupervised visitation. During the first visit, Ally fell down multiple stairs while Mother was putting packages in her car. Ally was bruised, scratched, and had a head injury from the incident. Instead of seeking immediate medical attention, Mother returned Ally to Grandmother and asked her to take the child to the hospital. Mother explained that Ally fell down a single step, a story Grandmother repeated to emergency room personal. Mother told a similar story to a DCS caseworker. Mother later admitted that Ally fell down half a flight of stairs. Mother testified that she was initially dishonest because she was afraid how Grandmother and DCS would react.

¶6 Mother and Ally continued to have unsupervised visitation. In May 2019, Mother returned Ally with an abrasion on her elbow. During an interview with DCS and Avondale police, Mother initially denied that the injury occurred while in her care. However, she later admitted that she knew the injury occurred during the visit and suggested it may have occurred when she was cooking while Ally sat on the counter next to the stovetop.

¶7 In August 2019, Dr. James Thal conducted a psychological assessment of Mother to assess her parental fitness and mental health. As part of the assessment, Dr. Thal administered the Minnesota Multiphasic Personality Inventory test. Mother's score was exceptionally high on this

---

[3] The Guardian ad Litem for Ally appealed the ruling, arguing the juvenile court erred when it found severance was not in Ally's best interests. On appeal, this court affirmed the juvenile court's ruling. *A.R. v. Dep't of Child Safety*, 246 Ariz. 402, 407, ¶ 16 (App. 2019).

measure, which correlated with deception, difficulty recognizing problems, and underreporting problems.

¶8        In October 2019, DCS moved to terminate Mother's parental rights based on the grounds of abuse, neglect, and the number of months in out of home placement. The petition was later amended, and prior to trial, DCS asked the court to find that it had already proven abuse grounds, which the court interpreted as a motion for issue preclusion. The court granted the motion, determining that Mother either "willfully abused a child prior or had failed to protect a child from willful abuse." However, the court advised that DCS would still need to prove by clear and convincing evidence that there was an ongoing risk of harm to Ally.

¶9        In early 2020, the juvenile court conducted a six-day trial. Dr. Thal testified about the results of his assessment and opined that Ally would be at risk if returned to Mother's care. He testified that Mother's lack of candor was particularly worrisome because it would affect her ability to proactively seek care for Ally in the future. Mother called her own expert witness, Dr. Roger Martig, to testify on her behalf. Dr. Martig opined that Mother seemed to be a committed parent, had persistently and diligently participated in a variety of services, and with the right resources would be able to effectively parent in the foreseeable future. On cross-examination, however, Dr. Martig admitted that Mother lacked insight and has a tendency not to seek help when it would be appropriate.

¶10        At the close of evidence, the juvenile court severed Mother's parental rights. The court declined to rule on the six-, nine-, and fifteen-month time in care grounds. Mother timely appealed. The State moved to stay this appeal and asked this court to order the juvenile court to rule on the alternative grounds for severance. However, this court denied the motion.

## DISCUSSION

### I.        Jurisdiction

¶11        As an initial matter, we must first discuss whether this court has jurisdiction over this appeal. The State argues that this court lacks jurisdiction over the appeal because the juvenile court refused to rule on all termination grounds alleged in the severance motion, and therefore the resulting order was deprived of substantive finality. The State asks this court to "hold that the juvenile court errs when it refuses to fully rule on the entirety of a party's motion for severance, and acknowledge that a

severance order is not final and appealable if there are alternate statutory severance grounds that have not been ruled on."

¶12        An appellate court has an independent duty to determine whether it has jurisdiction. *Musa v. Adrian*, 130 Ariz. 311, 312 (1981). To the extent this inquiry involves interpretations of statutes or court rules, we review de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018). This court has general appellate jurisdiction when a party appeals "[f]rom a final judgment entered in an action or special proceeding commenced in a [juvenile] court." A.R.S. § 12-2101(A)(1). Moreover, under the Arizona Rules of Procedure for the Juvenile Court, "[a]ny aggrieved party may appeal from a final order of the juvenile court to the court of appeals." Ariz. R.P. Juv. Ct. 103(A).

¶13        In the context of dependency proceedings, our supreme court has rejected a "narrow, technical conception of what constitutes a final order." *Matter of Appeal in Yavapai County Juvenile Action No. J-8545*, 140 Ariz. 10, 14 (1984). Rather, a final order is "[a]n order that disposes of an issue such that it conclusively defines the rights and/or duties of a party in a dependency proceeding in the juvenile court of this state." *Id.* at 15.

¶14        The State asserts that a termination order which fails to rule on all grounds for termination could "be revived such that the juvenile court would be required to rule on one or more additional statutory grounds in the event of an appellate reversal." The State concludes such an order fails to conclusively define the rights and duties of parties and therefore cannot be considered final. To support this argument, the State points out that the finality requirement is rooted in the Arizona public policy of promoting judicial economy and preventing piecemeal appeals. *See Barassi v. Matison*, 130 Ariz. 418, 421 (1981) ("The underlying rationale of requiring a final judgment for appealability is to avoid the constant disruption of the trial process . . . and to promote efficiency, that is, encourage the consolidation in one appeal of all error a litigant feels transpired during the trial."). The State also cites *Musa*. In *Musa*, the issue was whether a plaintiff could appeal a trial court's decision to dismiss certain theories of recovery when alternate theories of recovery for the same injury were still available. 130 Ariz. at 313. There is no finality under that scenario because the ultimate question of whether plaintiff can recover on the claim is unresolved. *See id.* The State contends that, just as an order failing to dispose of all legal theories for a single claim is not final, an order failing to dispose of all grounds for severance is not final.

**¶15**        We are not convinced. An order severing a parent's rights becomes final when "it conclusively defines the rights and/or duties of a party in a dependency proceeding in the juvenile court of this state." *J-8545*, 140 Ariz. at 15.[4] To be sure, when a court rules on only a single ground for termination, there is a possibility that the court may have to revisit alternative grounds if it is overturned on appeal. However, we do not define finality based on what may happen on appeal. Rather, we look to the "practical reality" of the order and whether it "precludes further action" on the issues. *Id.* Regardless of whether the court orders termination on a single ground, or multiple grounds, the finality of the result is the same—the parent's rights to their child are severed permanently. Like any final judgment rendered by a trial court, a termination order will always be subject to appellate review. That procedural practicality does not render a judgment any less final. For the foregoing reasons, we conclude that this court has jurisdiction over this appeal.

## II.    Termination of Parental Rights

**¶16**        Turning to the merits of this case—Mother argues that the juvenile court erred by finding DCS had proven termination grounds under A.R.S. § 8-533(B)(2), and that termination was in the child's best interests. In reviewing a termination order, we view the evidence and reasonable inferences in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and

---

[4]        Mother notes that in *Pima County Juvenile Action No. S-933*, our supreme court defined a final order, for the purposes of ruling on a petition for termination of parental rights, as an order "which ends the proceedings, leaving no question open for further judicial action." 135 Ariz. 278, 280 (1982). The State asserts that it is therefore unclear, when reviewing a ruling on a motion for termination of parental rights, whether this court should apply the standard of final as defined in *S-933*, or the newer standard from *J-8545*. However, our supreme court explained that, in deciding *S-933*, it was using the definition of final order to determine general appellate jurisdiction and was doing so only because no Arizona court had yet defined finality for the purposes of juvenile cases. *J-8545*, 140 Ariz. at 13 n.1. The court went on to explain that the Rules of Procedure for the Juvenile Court are self-contained, and that the court was not obligated to apply to juvenile cases the definition of final order used to determine general appellate jurisdiction. *Id.* We conclude that the definition of final order pronounced in *J-8545* is the correct standard to apply in this case.

resolve disputed facts." *Id.* (citation omitted). This court does not reweigh the evidence and we must affirm a termination order supported by reasonable evidence. *Id.*

**¶17**　　　　"Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). But even fundamental rights are not absolute. *Id.* To terminate a parent's parental rights the juvenile court must find at least one statutory ground under A.R.S. § 8-533 by clear and convincing evidence, A.R.S. § 8-537(B), and by a preponderance of evidence that termination is in the child's best interests. *Kent K.*, 210 Ariz. at 288, ¶ 41.

**¶18**　　　　The law allows the juvenile court to terminate a parent's rights if it finds that the "parent has neglected or willfully abused a child." A.R.S. § 8-533(B)(2). Neglect is defined as a parent's "inability or unwillingness . . . to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). Abuse is defined as "the infliction or allowing of physical injury" to a child. A.R.S. § 8-201(2). Abuse includes "situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8-533(B)(2).

### A.　　　Statutory Grounds Under §8-533(B)(2)

**¶19**　　　　The juvenile court may terminate a parent's rights to a child that has not yet suffered abuse or neglect if it finds by clear and convincing evidence that a parent: (1) abused or neglected another child, and (2) through an "extrapolation of unfitness," there is a "risk of harm" to the unabused child. *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 229, ¶ 24 (2020). Here, the court already found that Mother had either willfully abused another child or failed to protect that child from abuse. Given this finding, DCS only needed to prove an ongoing risk of harm to Ally stemming from the circumstances giving rise to the prior abuse. *See id.* The juvenile court found that DCS had proven such an ongoing risk of harm to Ally.

**¶20**　　　　Mother argues that DCS did not prove a risk of harm by clear and convincing evidence. Mother points out that she had unsupervised visitation with Ally for five months which she posits were without incident. She also asserts that her successful completion of two rounds of parent aide services illustrate her ability to safely parent Ally, noting that one parent aide provider reported Mother was able to appropriately redirect Ally and

that the pair appeared bonded. Mother also notes that, in her interviews with police after Ally's second injury, her vocal stress test did not reveal any evidence of deception. Mother went on to admit that Ally was injured during the first visit, but attempts to excuse her failure to seek medical treatment based on her fear it would negatively affect her dependency case. Mother also testified that she acknowledges her prior mistakes and promises to do better going forward.

¶21 Although Mother highlights several favorable facts presented to the juvenile court, we will not reweigh evidence, and we will affirm the termination order so long as it is supported by the record. *Jordan C.*, 223 Ariz. at 93, ¶ 18. In ruling on bests interests, the juvenile court explained that "Mother's common reaction to injuries to her children, even accidental injuries, . . . [is] to minimize and obfuscate." This finding supports the court's determination that Ally would be in danger if returned to Mother and is supported by the record. For instance, when Ally was injured during her first unsupervised visit, Mother minimized the extent of the injury, she lied about the severity of the accident, and failed to seek medical care for the child. Mother repeated this pattern the next time Ally was injured by denying knowledge of the injury and failing to seek medical assistance. Dr. Thal testified that this pattern of underreporting is likely to persist, and the court found this testimony credible. Mother's own expert agreed that Mother lacks insight and fails to seek help when the child suffers an injury. Moreover, this pattern is similar to the circumstances surrounding Andrew's abuse. Mother had also minimized the extent of his injuries and failed to seek medical attention for the child.

¶22 For the above reasons, Mother has not shown the juvenile court erred when it found that DCS proved by clear and convincing evidence the grounds for severance under A.R.S. § 8-533(B)(2).

## B. Best Interests

¶23 Mother also argues that the juvenile court erred when it found that severance was in the child's best interests. Severance is in a child's best interests if, under a totality of the circumstances, the child would "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). Further, "[t]he 'child's interest in stability and security' must be the court's primary concern." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016)).

¶24         To support her argument, Mother points to her trial testimony where she admits she made a mistake allowing her child to suffer injury. She also points out that, although she disputed the assertion that she minimizes the child's injuries, she acknowledged that she needs to seek medical attention when she becomes aware of an injury. She testified that she learned from this experience and, going forward, she plans to protect her child as much as she can and promised to be better. Again, we are not persuaded. The juvenile court did not find Mother's promises credible, stating that Mother's "*finite* window of opportunity for remediation . . . ha[d] been held open long enough." The court explained that "Mother does not have the ability to mitigate a clear and convincing risk of harm," but Grandmother does have such ability. Therefore, the court found that it was in the child's best interests to sever Mother's parental rights to allow Ally to be adopted by the Grandmother. This is supported by the record. The DCS caseworker testified that Ally and Grandmother had developed a parental relationship, Grandmother was meeting all of Ally's needs, and Grandmother intended to adopt the child. *See Demetrius L.*, 239 Ariz. at 4, ¶ 12 ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests."). The juvenile court did not err in finding termination of Mother's parental rights was in Ally's best interests.

## CONCLUSION

¶25         Accordingly, on this record, reasonable evidence supports the juvenile court's findings DCS proved by clear and convincing evidence statutory grounds under A.R.S. § 8-533(B)(2), and that severance was in the child's best interests. We affirm the termination of the parental relationship.

