NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ADAM C., KALYNN R., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY,
K.R., D.C., S.C., *Appellees*.

No. 1 CA-JV 22-0071
FILED 9-15-2022

---

Appeal from the Superior Court in Maricopa County
No. JD529178
JS519408
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant Kalynn R.*

Law Office of Ed Johnson, PLLC., Peoria
By Edward D. Johnson
*Counsel for Appellant Adam C.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1            Mother and father appeal the superior court's order terminating their parental rights to their children. Because mother knowingly, intelligently, and voluntarily waived her right to a trial, and because reasonable evidence supported the superior court's best-interests determination as to father, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2            This court views the evidence and any reasonable inferences in the light most favorable to affirming the superior court's decision. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3            Mother and father are parents of two children, one born in 2014 and one in 2016. Mother has another child born in 2009, who is not part of this proceeding. For many years, parents struggled with drug and alcohol addiction and domestic abuse. Maternal aunt and uncle learned about parents driving with children while intoxicated and fighting in children's presence—including an incident when mother stabbed father. As a result, maternal aunt and uncle filed two private dependency actions— one in 2015 and one in 2017. In both, the Department of Child Safety (DCS) took temporary custody of the children and provided parents with services. Ultimately, the superior court dismissed both dependency petitions.

¶4            Even so, both parents continued abusing drugs, alcohol, and one another in children's presence. Father admitted drinking significant amounts of alcohol every few nights and both parents used methamphetamine. Between December 2018 and April 2019, police responded to four incidents of domestic abuse at parents' home. During the last incident, father was intoxicated, yelled at the children, and slapped an armrest near one child who was crying and in the fetal position.

¶5            In April 2019, maternal aunt and uncle again filed a private dependency petition, alleging abandonment, chronic substance abuse, and neglect as to both parents. Also in April 2019, DCS took custody of children

and placed them with maternal uncle and joined as co-petitioner in the dependency petition. DCS referred both parents to substance-abuse assessment and treatment, urinalysis testing, parent-aide services, and supervised visitation. DCS also asked parents to enroll in domestic-violence counseling.

¶6            Father consistently visited with the children, while mother occasionally missed scheduled visits. Both parents inconsistently drug tested and tested positive for alcohol and methamphetamine. Toward the end of 2019, mother briefly demonstrated sobriety while living at a residential treatment facility. During that time, she submitted clean urinalysis tests, participated in a substance-abuse assessment, and completed parent-aide services. But after leaving that facility in May 2020, she refused to participate in a recovery-maintenance program and stopped testing. Father also attended a 30-day residential sober living program. But other than that program, he missed many substance-abuse counseling sessions, and when he attended, he minimized his addiction issues and resisted treatment. Ultimately, father closed out unsuccessfully from his substance-abuse program.

¶7            By the end of 2019, parents ended their abusive relationship. Father also completed parent-aide services, but the parent aide said father "did not demonstrate behavior changes necessary to enhance [his parenting] capacities" because he cancelled skill sessions, did not attend a longer treatment program, and did not take accountability for his actions. Throughout most of the dependency, father continued to use alcohol and methamphetamine.

¶8            In September 2019, the children's guardian ad litem filed a termination petition alleging neglect, chronic substance abuse, and previous removal grounds. Though the superior court set a consolidated hearing on the dependency and termination petitions for April 2020, the superior court continued the hearing several times for various reasons.

¶9            In October 2021, DCS filed substituted amended dependency and termination petitions in which DCS alleged chronic substance abuse and fifteen-month out-of-home placement grounds as to both parents. The superior court held a trial on both petitions in March 2022. At the hearing, mother pled no-contest to termination. Before she did so, the superior court conducted a colloquy with mother, including asking if she consulted with her attorney beforehand. Mother said she had. The superior court then advised mother she would waive certain rights by pleading no contest, including her rights to trial, to challenge DCS's allegations and make them

3

meet their burden of proof, to confront and cross-examine witnesses against her, to testify, and to call witnesses on her behalf. The court also told mother it would hear evidence from DCS even if she pled no contest. Mother said she understood those rights and still elected not to contest the petitions. The superior court, then, with mother and her counsel present, conducted an uncontested trial as to mother. Mother and her counsel did not observe the contested trial as to father.

¶10 After the hearing, the superior court found DCS proved the children were dependent as to both parents and found DCS proved by clear and convincing evidence the chronic substance abuse and fifteen-month out-of-home placement grounds for both parents. The superior court also found by a preponderance of the evidence termination would be in children's best interests. Accordingly, the superior court granted DCS's dependency and termination petitions. Mother and father timely appealed from the termination order, but not the dependency finding. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

## ANALYSIS

¶11 Mother argues she did not knowingly, intelligently, and voluntarily waive her trial rights. Father argues the superior court erred in finding termination was in children's best interests, and the superior court should have considered a permanent guardianship. We address each argument in turn.

## I. Knowing, Intelligent, and Voluntary Waiver

¶12 Though mother did not contest termination of her parental rights, she argues she did not knowingly, intelligently, and voluntarily plead no-contest because the superior court did not advise her of her right to present documentary evidence. Mother shows no reversible error.

¶13 "Parents enjoy a fundamental liberty interest in the care, custody, and management of their children." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 8 (2021) (quotations omitted). A parent must make a knowing, intelligent, and voluntary waiver of the fundamental constitutional right to the custody and control of one's child. *See* Ariz. R.P. Juv. Ct. 66(D)(1)(a) (June 30, 2022); *State v. Avila*, 127 Ariz. 21, 25 (1980) ("in any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made"). When a parent pleads no contest to termination of parental rights, the superior court must "[d]etermine whether the [parent]

4

understands the rights being waived." Ariz. R.P. Juv. Ct. 66(D)(1)(b) (June 30, 2022).[1]

**¶14**        This court reviews the interpretation of court rules *de novo*. *Ruben M. v. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 20 (App. 2012). Unless clearly erroneous, this court accepts factual findings if reasonable evidence and inferences supports them. *A.R. v. Dep't of Child Safety*, 246 Ariz. 402, 405, ¶ 6 (App. 2019). If findings combine law and fact, this court reviews them *de novo*. *White Mountain Health Ctr., Inc. v. Maricopa Cnty.*, 241 Ariz. 230, 248, ¶ 62 (App. 2016).

**¶15**        Whether mother validly waived her right to trial is a mixed question of law and fact. Arizona statute requires the waiver be "knowingly, intelligently, and voluntarily" given, but the facts determine whether the legal standard is met.

**¶16**        Here, mother's counsel represented and consulted with her throughout the proceedings. *See State v. Lerch*, 107 Ariz. 529, 530 (1971) (representation by counsel weighs against involuntariness). Before the hearing, the superior court informed mother she had the right to a trial on the allegations in the termination petition, the right to challenge the allegations, the right to hold DCS to its burden of proof, the right to confront and cross-examine any witnesses against her, and the right to testify herself and to call witnesses on her behalf. When the superior court asked if mother understood those rights, she said, "Yes, Your Honor, I do." The superior court also told mother she was waiving those trial rights by not contesting the allegations. Mother said she understood.

**¶17**        Mother now argues the superior court failed to "affirmatively establish" mother was aware of her due process rights because it did not advise her of her right to "present documentary evidence." To begin, even in the criminal setting, if the superior court informs a defendant of the right to trial, it need not chronicle every attendant trial right, including the right to present evidence. *See State v. Miller*, 110 Ariz. 304, 306 (1974). And the superior court advisement here went further than the *Miller* advisement because it advised mother of her rights to challenge the allegations at trial,

---

[1] Effective July 1, 2022, Rule 66(D)(1)(a) was repealed and replaced with Rule 353.e.2, which has slightly different language. We do not address Rule 353.e.2's new language.

to confront and cross-examine witnesses brought against her, and to testify and call witnesses on her behalf. *See id.*

**¶18** We note an issue for clarity though not raised in the opening brief. *See Lawrence T. v. Dep't of Child Safety*, 246 Ariz. 260, 262, ¶ 7, n. 2 (App. 2019). As part of the colloquy, the superior court said mother would waive her right to hold DCS to its burden of proof. In criminal pleas, the defendant must establish a factual basis for the plea. *See* Ariz. R. Crim. P. 17.3(b). But, in juvenile cases, the State still bears the burden of proving the statutory basis for termination and the termination is in the child's best interests. *See* Ariz. R.P. Juv. Ct. 66(D)(1)(b) (June 30, 2022); *Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 299, ¶ 16 (App. 2014), *abrogated on other grounds by Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020). The better practice when informing a parent of trial rights is to state DCS still must meet its burden of proof to support termination if the parent waives the right to trial. *See* Ariz. R.P. Juv. Ct. 66(D)(c) (June 30, 2022); *see also Tina T.*, 236 Ariz. at 297–99, ¶¶ 11–16 (App. 2014), *abrogated on other grounds by Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020).

**¶19** Even so, under the totality of the circumstances and facts of this case, the advisement adequately covered mother's right to present evidence. Accordingly, the superior court did not err when it accepted mother's waiver as knowing, intelligent, and voluntary.

## II. Children's Best Interests

**¶20** Father argues the superior court abused its discretion when it found severance was in children's best interests. He also argues the superior court should have considered a permanent-guardianship option.

### A. Totality of the Circumstances

**¶21** The superior court must find by a preponderance of the evidence termination is in children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). In doing so, the superior court "must consider the totality of circumstances" at the time of the trial, including whether the current placement is meeting children's needs, children's adoptability, the adoption plan, the parents' efforts toward rehabilitation, and the bond between the biological parents and children. *Alma S. v. Ariz. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018) (citation omitted); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶¶ 10–12 (App. 2016). Because the focus shifts from parents to children at the best-interests stage, the superior court's primary focus is children's "interest in stability and security." *Alma S.*, 245 Ariz. at 150, ¶ 12. Termination is in children's best interests if

terminating the parent-child relationship will benefit the children or continuing the parent-child relationship will harm children. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

¶22 Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" this court will affirm an order terminating parental rights if reasonable evidence supports the decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶23 DCS's case worker testified about children's placement with maternal uncle, saying the placement was adoptive, children were doing well there, and living with uncle would provide them permanency in a safe and stable environment. In contrast, father did not attend most of his drug testing, he minimized his addiction struggle, and he was still using alcohol and methamphetamine about three years after the dependency began—and almost seven years after DCS's first involvement. Though father completed his parent-aide program, the parent aide worried father was not working to remedy his addiction or taking responsibility for his past behavior.

¶24 Though father regularly attended visitations and had a bond with children, "[t]he existence and effect of a bonded relationship between a biological parent and a child . . . is not dispositive in addressing best interests." *Dominique M.*, 240 Ariz. at 98, ¶ 12. A parent-child bond is only one factor the superior court must consider under the totality of circumstances. *See id.* Here, the superior court said it considered the totality of the circumstances, including father's "efforts toward reunification, the parent-child bond, and fitness to parent." It also considered children's kinship placement and ultimately found severance was in children's best interests. Because reasonable evidence supports the superior court's order finding termination would be in children's best interests, the superior court did not err in terminating father's parental rights. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.

### B. Permanent Guardianship

¶25 Father relies on *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470 (2022), to argue we should extend its permanent-guardianship ruling to the out-of-home placement ground. We decline to do so here. In *Timothy B.*, our supreme court said the normal-home consideration in length-of-incarceration cases means the superior court "should consider the availability of a permanent guardian to provide a normal home life [during

the incarceration period] if another parent is unavailable." 252 Ariz. at 477, ¶ 27 (discussing termination under A.R.S. § 8-533.B.4).

**¶26**       But here the superior court terminated father's parental rights under the substance-abuse and fifteen-month out-of-home placement grounds. Unlike the length-of-incarceration ground in *Timothy B.*, the normal-home language does not appear in the substance-abuse and out-of-home placement grounds. *Compare* A.R.S. § 8-533.B.8(c) *and* § 8-533.B.3 *with* § 8-533.B.4; *see also Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323, ¶ 11 (App. 2017) (this court first looks "to the statute's plain language as the best indicator of [legislative] intent[,]" and if the language is clear and unambiguous, this court "must give effect to that language without employing other rules of statutory construction"); *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 25 (App. 2019) (discussing the elements required to establish the out-of-home placement ground).

**¶27**       Moreover, father did not raise the permanent-guardianship argument in the superior court or identify a potential permanent guardian for the superior court to consider. Accordingly, father waived the issue on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177–79, ¶¶ 10–18 (App. 2014).

## CONCLUSION

**¶28**       We affirm.

