NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO J.H., J.H., and N.H.

No. 1 CA-JV 23-0003
FILED 5-16-2023

Appeal from the Superior Court in Maricopa County
No.  JD42438
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge David D. Weinzweig joined.

**B A I L E Y**, Judge:

¶1        Lakrysia H. ("Mother") appeals the superior court's finding that her children J.H. (herein "A.H."), J.H., and N.H. are dependent.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In September 2022, the Department of Child Safety ("DCS") took temporary custody of the children after receiving reports of physical abuse and neglect.  Soon after, DCS filed a dependency petition on the grounds that Mother used excessive physical discipline, withheld food as discipline, and was emotionally abusive.  The superior court held a three-day trial on the dependency in November and December 2022.  Relevant to this appeal, the court heard testimony from Mother, the DCS investigative case specialist, and a Peoria police detective.

¶3        At trial, Mother conceded that A.H. and J.H. were dependent, as they refused her supervision.  However, she disputed the proposed factual bases of the dependency—abuse or neglect.  As for N.H., Mother contested the dependency and the finding requested by DCS.

¶4        The DCS investigative case specialist testified that DCS received a report that Mother had withheld food from N.H. and A.H. as discipline.  A few weeks later, A.H. was detained at a juvenile facility and then sent to MIND 24-7 at Mother's request.  DCS received a second report of abuse or neglect after Mother appeared unwilling to pick up A.H. from the juvenile facility.

¶5        Following the initial report, A.H. disclosed a pattern of food deprivation as punishment, Mother hitting A.H. with a broom, a belt, and her hand, and inappropriate physical discipline of all three children.  J.H. and N.H. corroborated A.H.'s allegations of physical abuse, emotional abuse, and food withholding.

¶6        The DCS specialist testified that A.H. did not wish to return home, and noted that "the first thing out of [A.H.'s] mouth" after the specialist introduced herself was "why haven't you taken us yet, and why does our mom keep getting to do this to us?"  A.H. told the specialist that Mother used physical discipline "basically anytime she was unhappy," but more often, Mother verbally abused the children.  N.H. described A.H. being left "bleeding with scratches and bruises" following Mother's physical discipline.  N.H. and A.H. both disclosed that Mother had instructed them not to speak to DCS.

¶7 Mother called A.H.'s special education teacher who testified that A.H. did not disclose abuse or food withholding to him. A police detective who had investigated Mother on DCS's behalf testified that Mother was cooperative, allowed N.H. and J.H. to speak with the officer, and that neither child disclosed abuse during the investigation. The officer observed food in the refrigerator and in the pantry that was accessible to the children. The detective reviewed photos of a bruise on N.H.'s leg that was allegedly caused by Mother spanking her and believed that the "faint" bruising visible in the photo was inconsistent with criminal abuse and therefore closed the case.

¶8 Mother denied that she abused or neglected her children. She testified that she used physical punishment only "as a last resort," which included spanking with a belt or throwing a slipper at the children. She claimed the children were violent towards each other, and that she could not control A.H. Mother explained that A.H. was admitted to Mind 24-7 for mental health concerns after breaking windows in the family's apartment. While she admitted she did not want A.H. returning home after Mind 24-7 released her, Mother denied that she refused to pick her up.

¶9 Mother admitted to throwing some "junk food" away, explaining that in one instance she did so because the children had bought more at the Dollar Store on her EBT card than she allowed. Mother admitted she had switched off the electrical breaker that would allow the children to cook food to determine which child made any given mess in the kitchen.

¶10 Mother participated in counselling services from A New Leaf, but denied she had anger issues. She testified that she requested DCS provide respite and attendant care, and that these services would help her reunify with the children.

¶11 Mother testified that she is willing to have N.H., J.H., and A.H. in her home. And while Mother agreed that the children "may be traumatized at this point," she was "not sure" whether any of her behavior caused their trauma.

¶12 After the second day of trial, Mother pled no contest to the allegations in the petition but noted that she planned to challenge the plea's factual basis on appeal.

¶13 The court accepted the plea and stated it would not find that physical discipline was abuse as a matter of law, but did find "[Section] 8-201's definition of abuse is broad, and [the court] is crediting the children's

statements that there was more than just the belt being used and that it was being used . . . sort of in anger and often inappropriately that did result in at least one bruise, if not more regularly."

¶14        The court issued a detailed minute entry finding the children dependent as to Mother. N.H. was placed in an in-home dependency at her request while A.H. and J.H. remained in out-of-home placement. In finding that Mother's physical discipline was excessive, the court credited the case manager's testimony about N.H.'s bruise and the children's statements to DCS that Mother's discipline had resulted in injury. The court also found severe emotional abuse as to N.H. based on school psychologist evaluations. The court found Mother's testimony that she used physical discipline as a last resort not credible and determined Mother "had little insight" into the effect her physical discipline had on the children. The court found Mother withheld food as a means of discipline "which has and will place the children at a substantial risk of harm."

¶15        Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 8-235(A).

## DISCUSSION

¶16        We review a superior court's dependency finding for an abuse of discretion and will affirm if any reasonable evidence supports the finding. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527, ¶ 9 (App. 2018). We do not reweigh the evidence or second-guess the superior court's credibility determinations on appeal. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶17        On appeal, Mother challenges the factual basis for the superior court's findings of abuse and neglect following her no contest plea and challenges the superior court's failure to order "specifically requested" services.

   I.        An adequate factual basis supports the superior court's findings of abuse or neglect.

¶18        Mother argues that the record 1) did not support a neglect finding because her actions did not create an unreasonable risk of harm 2) did not support a physical abuse finding because her actions caused no physical injuries, and 3) did not support a finding of "severe or serious" emotional damage. Because we affirm on grounds 1 and 2, we do not address ground 3.

4

**¶19**　　　A parent who pleads no contest to a dependency allegation may challenge the factual basis for a dependency finding, *Tina T. v. Dep't of Child Safety*, 236 Ariz. 295, 298, ¶¶ 14-15 (App. 2014), *overruled on other grounds by Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020), which we review for an abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). A court must set forth written findings constituting a factual basis. R.P. Juv. Ct. 338(d)(3)-(4). Abuse means "the infliction or allowing of physical injury, impairment of bodily function or disfigurement . . . ." A.R.S. § 8-201(2).

**¶20**　　　The record has more than reasonable evidence to support the superior court's dependency finding, including the children's statements.

**¶21**　　　Mother only wants us to reconsider the question based on evidence she prefers, which we will not do. She first argues the record had inadequate evidence of "physical injury." But § 8-201 does not require, as Mother alleges, that physical abuse leave "lasting marks, bruises or other like injuries." It only requires the "infliction or allowing of physical injury." *Id.*

**¶22**　　　She next argues that because DCS agreed that the children "did not appear to be malnourished" withholding food from them did not cause an unreasonable risk of harm. Neglect means, "[t]he . . . unwillingness of a parent . . . of a child to provide that child with . . . food . . . if that inability or unwillingness causes substantial *risk* of harm to the child's health or welfare." A.R.S. § 8-201(25)(a) (emphasis added). But as we noted in *E.R. v. Dep't of Child Safety*, neglect need not result in a serious physical injury to constitute abuse. 237 Ariz. 56, 59, ¶¶ 13-15 (App. 2015). To hold otherwise, "a parent could neglect and physically abuse his child, but as long as his behavior did not cause serious physical or emotional injury, no grounds would exist to terminate his parental rights." *Id.* at ¶ 14. The plain text of § 8-201 contradicts Mother's interpretation.

**¶23**　　　Here, the children disclosed to DCS that Mother regularly withheld food from them as a method of discipline. Even if no serious harm resulted, a finding that this practice created "a substantial risk" of harm is not an abuse of discretion. We affirm the court's finding of neglect.

　　II.　　The superior court did not err by failing to order all services requested by Mother.

**¶24**　　　Mother argues that the court's failure to order DCS to provide respite care and attendant care constituted an abuse of discretion. DCS has an obligation to provide services designed to address the circumstances

leading to dependency.  A.R.S. § 8-846.  While DCS must make reasonable efforts, DCS need not provide "every conceivable service."  *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  While Mother requested these services, she fails to explain how they would address the issues leading to dependency: her excessive discipline.  We find no abuse of discretion in the superior court declining to require these services.

**CONCLUSION**

¶25        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

6